**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **Aaron Ferguson** | * | |
| **11550 Crossroad Road Circle Unit # 626** | * | |
| **Middle River, MD 21220** | * | |
| | * | |
| *Plaintiff,* | * | |
| | * | |
| | * | **Case No.:** 21-2502 |
| | * | |
| **v.** | * | |
| | * | |
| | * | |
| **Baltimore City, Maryland;** | * | **JURY TRIAL DEMANDED** |
| **Baltimore Police Department** | * | |
| **242 W. 29th Street** | * | |
| **Baltimore, MD 21211** | * | |
| | * | |
| *Defendant.* | * | |
| | * | |
| **Serve:** | * | |
| | * | |
| **The Baltimore City Law Department** | * | |
| **Office of Legal Affairs** | * | |
| **C/O City Hall, Room 101** | * | |
| **100 N. Holliday St., Suite 101** | * | |
| **Baltimore, MD 21202** | * | |
| | * | |
| **Baltimore Police Headquarters** | * | |
| **601 East Fayette St.** | * | |
| **Baltimore, MD 21202** | * | |
| | * | |

---

**COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES**

COMES NOW, Plaintiff, Aaron Ferguson (hereinafter "Plaintiff" or "Mr. Ferguson"), by and through his undersigned counsel Dionna Maria Lewis, Esq. complains against Defendant, Baltimore City Police Department (hereinafter "Defendant" or "BPD") and in support thereof states as follows:

1

## INTRODUCTION

1.      On August 10, 2016, the Department of Justice published a scathing report about the Baltimore Police Department's widespread constitutional violations, the targeting of African Americans, and a culture of retaliation.[1] While the investigation and report focused largely on how Baltimore police abused the law, the people they were meant to serve, and the public trust, the complicit institutional engine that acquiesces in the destruction and demise of BPD's own Black male officers and sergeants remains pervasive, continuous, and swept under the rug. *This case is about when the police are fearful of the police—their own brothers and sisters in blue.*

2.      This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"); the Civil Rights Act of 1866, Section 1981(a) ("Section 1981"), and the Maryland Fair Employment Practices Act, Md. Code § 20-601 et seq. (FEPA) for the Defendant's unlawful actions against the Plaintiff, including harassment, discrimination, retaliation (prior statutorily protected activity), and creation of a hostile work environment based on race (African American) and sex (male).

## JURISDICTION AND VENUE

3.      This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq., and Section 1981, to redress and enjoin employment practices of the Defendant.

4.      This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

---

[1] https://www.justice.gov/opa/pr/justice-department-announces-findings-investigation-baltimore-police-department, "Justice Department Announces Findings of Investigation into Baltimore Police Department," May 17, 2021.

5.      Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant, which operates in Baltimore, Maryland.

6.      Additionally, venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendant transacts substantial business in this District, and Defendant maintains employment records related to this action in the District of Maryland.

## EXHAUSTION OF REMEDIES

7.      Plaintiff has exhausted all available administrative remedies.

8.      Plaintiff filed a charge with the Baltimore Field Office of the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race (African American), sex (male), and retaliation (prior statutorily protected activity).

9.      On April 26, 2021, the EEOC received Plaintiff's request for issuance of a Notice of Right to Sue in connection with the above-referenced claims.

10.      On July 23, 2021, after Plaintiff's request, the Department of Justice ("DOJ") issued Plaintiff a Right-to-Sue Letter.

11.      Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

## NATURE OF THE ACTION

12.      Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of his rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

13.     Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of his constitutional and statutory rights.

14.     The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

## PARTIES

15.     Plaintiff, Mr. Aaron Ferguson ("Plaintiff" or "Mr. Ferguson"), is an African American male who resides in Baltimore County.

16.     Defendant is a municipal police force, whose jurisdiction encompasses Baltimore, Maryland.

17.     The Baltimore Police Department ("Defendant" or "BPD") is the 8th largest municipal police force in the United States, staffed by nearly 3,100 civilian and sworn personnel. The Department's jurisdiction covers Maryland's largest city, with a population of approximately 611,648 people.

18.     During the relevant period, Defendant employed Mr. Aaron Ferguson.

19.     During the relevant period, Plaintiff was Defendant's employee within the meaning of Title VII, and thus entitled to the protects of Title VII.

## FACTUAL ALLEGATIONS

20.     Defendant employed Plaintiff (African American male) for approximately 25 years, from February 28, 1995 until August 1, 2020.

21.     Mr. Ferguson worked full-time in the Eastern District as a Sergeant for BPD. There, he provided exemplary service to his community and was an outstanding employee who, a fact

4

notable considering his office, did not have any history of disciplinary actions against him. Mr. Ferguson worked harmoniously with his direct reports in the Eastern Division of the BPD for almost three (3) decades.

22.     In or around January 2019, Lieutenant Donald Slimmer (Caucasian male) came to the Eastern District and became Plaintiff's direct supervisor. This event shifted the positive work environment in the Eastern District, for the worse.

23.     Mr. Ferguson observed the overall morale of the Division decreased contemporaneously to Lt. Slimmer's arrival to the Eastern District. This change in culture was marked by several issues of harassment and intimidation of employees of color, especially towards African American female police officers.

24.     Notably, Mr. Ferguson observed Lt. Slimmer affording Caucasian female police officers, such as Officer Heather Myers, preferential treatment over African American male and female police officers.

25.     Mr. Ferguson observed Caucasian female police officers being granted choices when selecting detail days, choices when selecting training days, and granted overtime hours when requested. The same opportunities were not afforded to African American police officers working the same shift.

26.     Furthermore, Mr. Ferguson observed Lt. Slimmer closely scrutinizing employees of color and disciplining them in an inconsistent fashion. On one such occasion, Lt. Slimmer charged an African American employee for not having their shoes laced during roll call and threatened disciplinary action. Caucasian officers were not disciplined or reprimanded for the same infractions.

27.     Lt. Slimmer would criticize officers of color on the smallest issues, while favoring and treating Caucasian female officers more preferably, such as Officer Myers.

28.     Mr. Ferguson observed Lt. Slimmer physically following young African American female officers on the shift without reason, adding to the growingly toxic and hostile work environment. Caucasian female employees were not followed in this fashion, demonstrating both the arbitrariness of Lt. Slimmer's conduct and detrimental treatment against female employees of color that Caucasian female employees were not subjected to.

29.     Mr. Ferguson observed Lt. Slimmer forcing African American police officers to commence towing of legally parked cars. Caucasian female workers were not forced to commit such offenses, further indicating Lt. Slimmer's discriminatory treatment favoring Caucasian female employees.

30.     Concerned about the growingly toxic work environment, in or around April 2019, Mr. Ferguson began filing internal complaints and reports regarding Lt. Slimmer's preferential treatment of Caucasian female officers, at the expense of employees of color such as Plaintiff.

31.     Following Plaintiff's numerous complaints, Lt. Slimmer called him to his office under the guise of a dispute between Officers Coppage and McHenry. Upon entering the office, Lt. Slimmer immediately warned Plaintiff, "I have had ten EEOC complaints on me and I won them all." Mr. Ferguson felt very uncomfortable and upset by Lt. Slimmer's remark and bravado. He perceived this as a threat and an attempt to silence him.

32.     A few days after Lt. Slimmer's subtle threat to Plaintiff, Mr. Ferguson spoke with Officer Charles Dockery-Diaz, another police officer who worked his shift. Officer Charles Dockery- Diaz told Mr. Ferguson that Lt. Slimmer had gave him the same warning. Mr. Ferguson observed Officer Dockery-Diaz visibly upset discussing the peril behind Lt. Slimmer.

33.     A short time after Mr. Ferguson's conversation with Officer Dockery-Diaz, he was told by Sgt. Gary Klado that Lt. Slimmer had issued him the same thing.

34.     During the morning hours of June 6, 2019, Lt. Slimmer called Plaintiff and Officer Dockery-Diaz to his office for a meeting. During the meeting, Lt. Slimmer provided a second warning to them both, "If you are gonna mess with one, mess with them all so they can't file an EEOC against you." Both Plaintiff and Sgt. Dockery-Diaz were shocked, upset, and offended by Lt. Slimmer's second warning.

35.     Around the time Plaintiff began filing consistent internal complaints against Lt. Slimmer, based on the preferential treatment of Caucasian female officers at the expense of officers of color  Lt. Slimmer began retaliating against Plaintiff making the work environment increasingly hostile.

36.     On or about June 13, 2019, during roll call, Lt. Slimmer directed the officers working that they must have summonses attempted and returned to him by 1100 hours. To comply with Lt. Slimmer's orders and deadline for summonses, Plaintiff directed shift officers to contact him if they were stuck on a call or on an incident requiring them to be unavailable for a long period of time.

37.     Immediately thereafter, between 1030 and 1100 hours, Plaintiff and Lt. Kevin Roeser were called to Lt. Slimmer's office. Lt. Slimmer handed Plaintiff a Non-Punitive Counseling Memo to sign stating Plaintiff violated Policy 302 Rule 1, Section 12, "Members will not, at any time, be insubordinate or disrespectful to a superior." The form further stated that, "During roll call I (Lt. Slimmer) told him (Mr. Ferguson) to collect all of the Criminal Summons by 11am. He (Mr. Ferguson) proceeded to make excuses as to why the officers will be unable to complete the summons by 11.".

38.     Plaintiff contests the Non-Punitive Counseling Memo, as it was merely based on retaliation for Plaintiff's internal complaints against Lt. Slimmer.

39.     Mr. Ferguson received a second Non-Punitive Counseling Memo, which stated that he violated the Rules, Regulations, General Orders, or other Directives or Orders of the BPD, or have failed to perform as required, when Mr. Ferguson allegedly allowed the shift to drop below Constance (the amount of officers that work the shift). However, there was no violation, where the Constance was at 13, which the BPD at the time were using 13 as the Constance.

40.     On or about June 14, 2019, Lt. Slimmer ordered Plaintiff to write a Non-Punitive Counseling Memo for Officer Bruce Holt (Caucasian male) for allegedly being unprofessional, disrespectful, and overall rude during a vehicle stop he made on June 13, 2019. Plaintiff reviewed video footage of the vehicle stop, and observed no indications of Officer Holt disrespecting the vehicle inhabitants.

41.     Plaintiff later learned that Officer Haley Nehms (Caucasian female) was a passenger in the stopped vehicle and had called in a favor with Lt. Slimmer after being stopped by Officer Holt.

42.     Lt. Slimmer told Officer Nhems to call 2284 so that he can falsely charge Officer Holt as a favor. Plaintiff later overheard Officer Nehms bragging about the called-in favor.

43.     Lt. Slimmer knew Officer Holt was under Plaintiff's command. The favor was called in as part of the targeted retaliatory attack on Plaintiff for his prior internal complaints.

45.     Plaintiff further noticed that on several occasions, Lt. Roeser (first name unknown) and Lt. Slimmer whispering to each other, conspiring against him. On or about the week of June 28, 2019, Plaintiff observed numerous attempts by Lt. Roeser to intimidate Plaintiff during meetings, through menacing glares.

46.     On or about July 5, 2019, Lt. Roeser gave Plaintiff a Return for Correct Report, without the requisite paperwork requiring correction. As such, Plaintiff was unable to complete the Return for Correct Report. This was yet another action done to irritate and cause issues for Plaintiff, done in retaliation for his internal reports on Lt. Slimmer.

47.     On or about August 1, 2019, Plaintiff received a call from his wife that she needed to be taken to the hospital. Plaintiff immediately notified Shift Commander Motts (First name unknown) and left to tend to his wife. Plaintiff notified Sgt. Klado and Lt. Slimmer through text that he needed the next day, August 2, 2019, off as Plaintiff did not want to irritate them by disturbing them late in the night.

48.     On the following day, August 2, 2019, Ms. Ferguson's doctor required her to remain at the hospital for an additional day. Plaintiff sent another text message to Lt. Slimmer and Captain Nicholas Edwards, requesting another day off to care for his wife.

49.     During the late evening of August 3, 2019, Plaintiff saw a missed call from Lt. Slimmer. Plaintiff returned Lt. Slimmer's call and immediately was greeted by Lt. Slimmer yelling and inquiring why he was not at work. Despite being verbally assaulted by during this difficult time, Plaintiff already accustomed to such behavior, calmly asked if Lt. Slimmer had received his messages regarding his wife's hospitalization. Lt. Slimmer responded bluntly, "No".

50.     During the conversation with Lt. Slimmer, Plaintiff requested a Safe Sick Leave, for his days off to care for his wife. Lt. Slimmer stated that safe sick leave is for one's spouse, not girlfriend, insinuating both that Plaintiff did not know the policy and that he wanted to use Safe Sick leave incorrectly. Lt. Slimmer's hostile response and callous disregard for Plaintiff's situation, exemplifies the culture he fostered of a hostile and intimidating work environment for employees of color, such as Mr. Ferguson.

51.     On or about August 5, 2019, Lt. Slimmer noted that Officer Holt was not present during roll call. Officer Holt had previously notified Plaintiff that he needed that day off for Use of Force training. Plaintiff went to check with Sgt. Maurice (Administrative Sergeant) to see if Officer Holt's absence had been noted. Sgt. Maurice noted that the Administrative Office no longer inputs information regarding days off. At no point prior had Plaintiff received an email update regarding this policy change.

52.     Not until August 15, 2019, did Plaintiff receive an email about the policy change. However, upon reviewing the policy change, Plaintiff notice that Use of Force training, was still to be noted by the Administrative Office. Accordingly, Plaintiff was confused as to why Officer Holt did not have his Use of Force training recorded by the Administrative Office. This situation is yet another example of how Lt. Slimmer manipulates the policies and orchestrates staff within the Department, to make concerted efforts to needlessly complicate matters and frustrate Plaintiff in retaliation for his internal reports against him, thereby create a hostile work environment.

53.     Lt. Slimmer's hostility toward and retaliation against Plaintiff continued. On or about September 10, 2019, Plaintiff responded to a vehicular accident in Central District (a few blocks away from Eastern District). At this time, Lt. Slimmer texted Plaintiff, "Sarge what are you doing in Central?" Plaintiff responded to him that he was stopping by Headquarters. Lt. Slimmer then replied, "Okay, submit an administrative report as to why you are going to HQ." This is yet another example of Lt. Slimmer needlessly questioning and harassing the Plaintiff, a pattern of behavior that had become regular the past several months.

54.     On or about September 27, 2019, without prior notice, Plaintiff was assigned to be Shift Commander. Plaintiff had been in In-Service training for the week, and Lt. Slimmer never gave Plaintiff any guidance or heads up on responsibilities and tasks prior to being assigned Shift

Commander. Lt. Slimmer's actions undermined Plaintiff by ill-preparing him for an opportunity for career advancement.

55.     Lastly, Plaintiff was directed by Lt. Slimmer to get Officer Kevin Kolb (Caucasian American, male) to sign a Mandatory Appearance Form. Lt. Slimmer had seen Officer Kolb previously, yet he did not obtain his signature at that time. Considering the toxic environment and workplace culture, Plaintiff believes that Lt. Slimmer did not approach Officer Kolb intentionally as he wanted to make Plaintiff feel uncomfortable giving the form to Officer Kolb and make Plaintiff appear as a "bad guy" for making Officer Kolb attend the event, namely a Civil Rights event for African Americans.

56.     As a result of the hostile work environment created by Lt. Slimmer, Lt. Slimmer's tactics, hostile acts, obvious retaliation against Mr. Ferguson for his complaints and BPD's failure to act or attempt to remedy the situation, Mr. Ferguson was forced to resign from the BPD.

57. As a result of the egregious conduct by Lts. Slimmer and Roeser, both agents of Defendant, and the inaction of Defendant shown by not attempting to remedy its unlawful conduct, Mr. Ferguson experienced significant emotional distress and anxiety requiring regular therapy sessions to manage.

58.     Plaintiff was forced to file suit due to the Defendant's inability to remedy their unlawful conduct, which has cost Plaintiff significant financial strain as well as emotional distress.

59.     The Defendant's discriminatory and retaliatory practices are in violation of federal and state statutes, including Title VII of the Civil Rights Act, Section 1981, and FEPA.

## COUNT I

## VIOLATION OF TITLE VII - RACE DISCRIMINATION

60.     Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

61.     A prima facie case of race discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

62.     Here, the four (4) elements of a prima facie case of race discrimination are met. The Plaintiff is African American, and is a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Plaintiff is a qualified police officer, as he had approximately twenty-five (25) years on the force and maintained the title of Sergeant. Plaintiff suffered an adverse employment action directly related to his position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, when he was harassed and retaliated against by Lt. Slimmer and Lt Roeser as mentioned above. Similarly situated white employees such as Officer Myers (Caucasian female) were treated more favorably than the Plaintiff. Lastly, the above-mentioned harassment and retaliation towards the Plaintiff gives an inference of race discrimination and prejudice.

63.     Plaintiff is a member of a protected class as an African American.

64. Here, the four (4) elements of a prima facie case of race discrimination are met. The Plaintiff is a African American man and considered a member of a protected class. The Plaintiff is a qualified police officer, as he had approximately twenty-five (25) years on the force and maintained the title of Sergeant. The Plaintiff suffered an adverse employment action directly

related to his position of being a protected class member as recognized under Title VII while working with Lt. Slimmer where he was subjected to ongoing harassment and retaliation including but not limited to, being issued a Non-Punitive Counseling Memo on June 13, 2019 without a sufficient basis where Plaintiff was not being insubordinate; being issued a Non-Punitive Counseling Memo despite having the Constance at an acceptable level of 13; being forced to reprimand an officer under his command (Officer Holt) for Officer Holt's allegedly disrespectful car stop, the ulterior motive being retaliation against Plaintiff and calling in a favor for Officer Nehms (Caucasian female); and conspiring with Lt. Roeser to intimidate Plaintiff including, but not limited to: glaring at Plaintiff at meetings and undermining Plaintiff's authority as noted in the preceding Statement of Facts section. The above-mentioned actions by the Defendants towards the Plaintiff demonstrates the discriminatory and prejudicial manner in which the Defendants treated the Plaintiff and his lawful claims against them.

65.     Because of his race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

66.     Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

67.     Defendant knew of Plaintiff's race as an African American prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination and attitudes Plaintiff was being subjected to because of his race.

68.     Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race.

69.     Defendant reprimanded Plaintiff in a way that deprived him of workplace safety and otherwise adversely affected his status as an employee because of his race.

70.     Other similarly situated white female employees such as Officers Myers and Nehms have been treated more favorably than the Plaintiff with regards to the terms of employment and workplace conditions.

71.     Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

72.     Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

73.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any valid reason for its unlawful conduct.

74.     Defendant's aforementioned conduct toward Plaintiff because of his race has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of Plaintiff's rights.

75.     Defendant discriminated against Plaintiff because of his race by engaging in, tolerating, or failing to prevent racial discrimination against Plaintiff and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff by him and others at his hand.

76.     Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

77.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

78.     Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

79.     Further, Defendant's treatment and actions are ongoing in that Department without any expected termination not authored by this Court.

80.     Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

81.     Similarly, situated non-Hispanic Caucasian employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

82.     Defendant has at least 15 employees, and is not otherwise excused from compliance under Title VII, but by and through its conduct, has violated Title VII.

## COUNT II

## VIOLATION OF TITLE VII – SEX DISCRIMINATION (GENDER)

83.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

84.     A prima facie case of sex discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

85.     Here, the four (4) elements of a *prima facie* case of sex discrimination are met. The Plaintiff is a man and considered a member of a protected class. The Plaintiff is a qualified police officer, as he had approximately twenty-five (25) years on the force and maintained the title of Sergeant. The Plaintiff suffered an adverse employment action directly related to his position of

being a protected class member as recognized under Title VII while working with Lt. Slimmer where he was subjected to ongoing harassment and retaliation including but not limited to, being issued a Non-Punitive Counseling Memo on June 13, 2019 without a sufficient basis where Plaintiff was not being insubordinate; being issued a Non-Punitive Counseling Memo despite having the Constance at an acceptable level of 13; being forced to reprimand an officer under his command (Officer Holt) for Officer Holt's allegedly disrespectful car stop, the ulterior motive being retaliation against Plaintiff and calling in a favor for Officer Nehms (Caucasian female); and conspiring with Lt. Roeser to intimidate Plaintiff including, but not limited to: glaring at Plaintiff at meetings and undermining Plaintiff's authority as noted in the preceding Statement of Facts section. The above-mentioned actions by the Defendants towards the Plaintiff demonstrates the discriminatory and prejudicial manner in which the Defendants treated the Plaintiff and his lawful claims against them.

86.     Defendant treated Plaintiff less favorably than similarly situated female employees such as Officer Nehms and Officer Myers, who were given overtime upon request, granted unethical favors (such as during Officer Nehms' car stop), allowed to select their training days and were not subject to hostile treatment. Further, Officer Nehms and Myers (both female) were not subject to heavy scrutiny, humiliation or retaliation such as what Plaintiff experienced when he received baseless Non-Punitive Counseling Memos.

87.     Because of his sex, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Title VII.

88.     Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment.

89.     Defendant knew that Plaintiff was a man prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination he was subjected Plaintiff to because of his sex, not being Defendant's preference - female.

90.     Plaintiff has been treated differently and subjected to different terms and conditions of employment due to his sex.

91.     Defendant has limited, segregated and classified Plaintiff in a way that has adversely affected his status as an employee because of his sex.

92.     Other employees who were similarly situated, but members of a class (women) different than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

93.     Plaintiff's sex was a determining factor in Defendant's unlawful conduct toward Plaintiff.

94.     Plaintiff's sex was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

95.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

96.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his sex.

97.     Defendant discriminated against Plaintiff because of his sex by engaging in, tolerating or failing to prevent sex discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

98.     Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

99.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

100.    Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

101.    Further, Defendant's treatment and actions were ongoing.

102.    Plaintiff has incurred lost wages, loss of reputation now and into the future, and all of the other losses stated, with Plaintiff not contributing in any way thereto.

## COUNT III

## VIOLATION OF TITLE VII – RETALIATION

103.    Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

104.    Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, id. § 2000e–3(a). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65 (1986).

105.    Here, the Plaintiff faced retaliation for the complaints he submitted internally with his employer, the Defendant, and then externally with the EEOC alleging discrimination. The instances of retaliation include but are not limited to: being issued a Non-Punitive Counseling Memo on June 13, 2019 without a sufficient basis as Plaintiff had objectively not been insubordinate; being issued a Non-Punitive Counseling Memo despite having the Constance at an acceptable level of 13; being forced to reprimand an officer under his command (Officer Holt) for Officer Holt's allegedly disrespectful car stop, with Defendant's ulterior motive being to simultaneously retaliate against Plaintiff while also performing a favor for a member of his preferred class, Officer Nehms (Caucasian female); and conspiring with Lt. Roeser to intimidate Plaintiff including but not limited to glaring at Plaintiff at meetings and undermining Plaintiff's authority as noted in the preceding Statement of Facts section.

106.    Defendant subjected Plaintiff to the aforementioned adverse employment actions because of his opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

107.    Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to him providing the aforementioned adverse warnings demonstrating aware of Plaintiff's reports, was informed by Plaintiff directly, advised by an EEOC representative or otherwise should have known that Plaintiff engaged in the complaint process based on his informal and formal complaint filings.

108.    The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily protected activity.

109.    Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

110.    Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

111.    Similarly situated employees (with no known prior EEOC activity) were not subjected to the same, similar, or any adverse treatment.

112.    Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, creating a chilling effect in violation of Title VII.

113.    The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any valid reason for its unlawful conduct.

114.    Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

115.    Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendant's discriminatory conduct.

116.    Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

117.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

118.    Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

119.    Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

120.    Defendant must comply with Title VII, and by and through its conduct, violated the law.

121.    Defendant's actions were intentional, reckless, and malicious.

122.    The reasons proffered by Defendant for their unlawful conduct are pretextual and Defendant cannot offer any legitimate reason for their unlawful conduct.

## COUNT IV

## VIOLATION OF SECTION 1981

123.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

124.    As an African American, Plaintiff is a member of a protected class.

125.    Because of his race (African American), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Section 1981.

126.    Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiffs employment.

127.    Defendant knew that Plaintiff is an African American prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected to because of his race.

128.    Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race (African American).

21

129.     Defendant has limited, segregated, and classified Plaintiff in a way that deprived Plaintiff of employment opportunities and otherwise adversely affected his status as an employee, because of his race (African American).

130.     Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than the Plaintiff in the terms and conditions of employment.

131.     Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

132.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any valid reason for its unlawful conduct.

133.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (African American).

## COUNT V

**VIOLATION OF THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT (FEPA)**

134.     Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

135.     The Maryland Fair Employment Practices Act (FEPA), Md. Code Ann., State Gov't, § 20-601 *et seq*. outlaws discrimination in employment based on race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, genetic information, or disability by employers with more than 15 employees.

136.     Under FEPA, an employer can be held legally responsible if the person responsible for the harassment can make or recommend employment decisions (e.g., hiring and firing,

promotion and demotion, and reassignments) or directs, supervises, or evaluates the work activities of the employee, even if that person does not have the power to make employment decisions. Additionally, an employer can be liable if its own negligence leads to harassment or enables harassment to continue.

137.    Harassment is unwelcome or offensive conduct that is based on "race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, or disability."

138.    Here, the Plaintiff was subjected to harassment or offensive conduct that is based on race and sex, where he was: issued a Non-Punitive Counseling Memo on June 13, 2019 without a sufficient basis where Plaintiff was not being insubordinate; being issued a Non-Punitive Counseling Memo despite having the Constance at an acceptable level of 13; being forced to reprimand an officer under his command (Officer Holt) for Officer Holt's allegedly disrespectful car stop, the real reason being both retaliation against Plaintiff and calling in a favor for a member of his preferred class (Caucasian female); and conspiring with Lt. Roeser to intimidate Plaintiff including but not limited to glaring at Plaintiff at meetings and undermining Plaintiff's authority as noted in the preceding Statement of Facts section. The above-mentioned actions by the Defendants towards the Plaintiff demonstrates the discriminatory and prejudicial manner in which the Defendants treated the Plaintiff and his lawful claims against them.

139.    The Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (African American) and sex (male).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Mr. Aaron Ferguson, respectfully prays that this Court grant him the following relief:

a. Enter a declaratory judgement finding that the foregoing actions of Defendant violated Title VII, Section 1981, and FEPA;

b. Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c. Award back pay and compensatory damages in the amount of $1,000,000.00 that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages, lost job benefits; physical and psychological injury, humiliation, embarrassment; and mental and emotional distress caused by the conduct of the Defendant alleged herein;

d. Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e. Order such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable herein.

Dated: September 29, 2021

Respectfully submitted,

_____
Dionna Maria Lewis, Esq.
District Legal Group, PLLC
Bar No. 19486
700 Pennsylvania Ave, SE, Suite 2098
Washington, D.C. 20003
Phone: (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff Aaron Ferguson*