IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AARON FERGUSON,                          *

    Plaintiff,                           *

    v.                                   *        Civil No.: BPG-21-2502

BALTIMORE POLICE DEPARTMENT               *

    Defendant                            *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4.  (ECF No. 14).  Currently pending are defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Motion to Dismiss") (ECF No. 20), plaintiff's Motion in Opposition to Defendant's Motion to Dismiss ("Opposition") (ECF No. 22), and defendant's Reply in Support of Motion to Dismiss, or in the Alternative, for Summary Judgment ("Reply") (ECF No. 23).  No hearing is deemed necessary.  Loc. R. 105.6.  For the reasons discussed herein, defendant's Motion to Dismiss (ECF No. 20) is granted.

## I.    BACKGROUND

Plaintiff Aaron Ferguson ("plaintiff") was employed as a police sergeant by defendant Baltimore Police Department ("defendant" or "BPD") from February 28, 1995, until August 1, 2020.  (ECF No. 1 ¶¶ 20-21).  Plaintiff alleges the following facts in his Complaint.  Plaintiff had no history of any disciplinary actions against him and experienced a "positive work environment" until January 2019, when Lieutenant Donald Slimmer ("Lt. Slimmer") became plaintiff's direct

supervisor.  (Id. ¶¶ 21-22).  Following Lt. Slimmer's arrival as supervisor, plaintiff observed Lt. Slimmer discriminating against black male and female police officers.  For example, white female officers were granted their choice of detail and training days as well as overtime hours whereas black officers were not.  (Id. ¶25).  In addition, Lt. Slimmer "closely scrutinize[ed] employees of color and discipline[ed] them in an inconsistent fashion," including, on one occasion, charging a black employee for not having their shoes laced during roll call and threatening disciplinary action. (Id. ¶ 26).  Lt. Slimmer would also "criticize officers of color on the smallest issues," follow young black female officers on the shift "without reason," and force black officers to tow legally parked cars.  (Id. ¶¶ 27-29).  White female officers were not subjected to such treatment.  (Id.)

In April 2019, plaintiff began filing internal complaints against Lt. Slimmer based on his alleged preferential treatment of white female officers.  (Id. ¶ 30).  Thereafter, Lt. Slimmer called plaintiff to his office and stated, "I have had ten EEOC complaints on me and I won them all."  (Id. ¶ 31).  On June 6, 2019, Lt. Slimmer called plaintiff and another officer to his office for a meeting, during which Lt. Slimmer stated, "If you are gonna mess with one, mess with them all so they can't file an EEOC against you."  (Id. ¶ 34).

In addition, plaintiff alleges that Lt. Slimmer retaliated against him for filing internal complaints by issuing two "non-punitive counseling memos" against plaintiff and forcing plaintiff to issue a baseless non-punitive counseling memo against another officer under plaintiff's command.  (Id. ¶¶ 37-43).  Plaintiff also observed another officer, Lt. Roeser, "conspiring" with Lt. Slimmer against plaintiff during meetings by "whispering to each other" and exhibiting "menacing glares."[1]  (Id. ¶ 45).  Further, plaintiff alleges additional acts of retaliation by Lt. Roeser and Lt. Slimmer, including Lt. Roeser's failure to provide plaintiff with required paperwork to

---

[1] Plaintiff notes that he is not aware of Lt. Roeser's first name.  (ECF No. 1 ¶ 45).

complete a report, Lt. Slimmer's denial of "safe sick leave" for plaintiff to care for his wife, "manipulat[ing]" an administrative policy without notifying plaintiff, questioning plaintiff on one occasion about why he was visiting headquarters, assigning plaintiff to shift commander without prior notice and without any guidance on his responsibilities, and requiring plaintiff to get another officer to sign a mandatory appearance form and attend a civil rights event for African Americans. (Id. ¶¶ 46, 50-55).  Plaintiff claims that the allegedly retaliatory actions noted above created a hostile work environment and ultimately forced plaintiff to resign from the BPD.  (Id. ¶ 56).

On January 27, 2020, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation.  (ECF No. 20-3).  On March 4, 2021, plaintiff filed an amended charge with the EEOC ("Amended Charge"), modifying the dates of alleged discrimination and unchecking the box for "continuing action." (ECF No. 20-4).  Plaintiff then filed a request for a Notice of Right to Sue, which the EEOC received on April 26, 2021.  (ECF No. 1 ¶ 9).  On July 23, 2021, the U.S. Department of Justice issued plaintiff a Notice of Right to Sue letter.  (ECF Nos. 1 ¶ 10, 22-3).

On September 29, 2021, plaintiff filed suit in this court against defendant on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331.  (ECF No. 1 ¶ 3).  Plaintiff asserts five counts against defendant: (1) discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq.; (2) discrimination based on sex in violation of Title VII; (3) retaliation in violation of Title VII; (4) violation of 42 U.S.C. § 1981; and (5) violation of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't, § 20-601, et seq.  (Id. at 12-23).  Defendant moves to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment.  (ECF No. 20).

## II.     **STANDARD OF REVIEW**

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a complaint.  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  When ruling on such a motion, the court must "accept[] all well-pleaded allegations in the plaintiff's complaint as true" and "draw[] all reasonable factual inferences from those facts in the plaintiff's favor."  Id. at 244.  Nonetheless, "[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."  Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Rather, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  Ashcroft, 556 U.S. at 678 (internal citation and quotation marks omitted).  A plaintiff satisfies this standard not by forecasting evidence sufficient to prove the elements of the claim, but by alleging sufficient facts to establish those elements.  Walters, 684 F.3d at 439.  Accordingly, "while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'"  Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.     **DISCUSSION**

Defendant moves to dismiss the Complaint pursuant to Rule 12(b)(6).[2]  Specifically, defendant contends that Counts I, II, III, and V should be dismissed because plaintiff failed to

---

[2] Alternatively, defendant moves for summary judgment.  (ECF No. 20-1 at 3).  Defendant, however, offers no argument in its motion papers in support of converting its Motion to Dismiss to one for summary judgment.  In addition, no formal discovery has been taken in this case.  Accordingly, defendant's alternative Motion for Summary Judgment is denied without prejudice.  See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Balt., 721 F.3d

exhaust his administrative remedies.[3]  (ECF No. 20-1 at 12).  Defendant also asserts that plaintiff's

Title VII claims in Counts I, II, and III are time barred.  (Id. at 18-20).  In addition, defendant

argues that plaintiff fails to state a claim for race discrimination and hostile work environment.

(Id. at 20-27).  Finally, defendant maintains that plaintiff's MFEPA claim in Count V should be

dismissed because plaintiff failed to comply with the Local Government Tort Claims Act and

defendant has sovereign immunity from state law claims.  (Id. at 28-30).  Each of defendant's

arguments will be addressed in turn below.

### A.  Exhaustion

Defendant argues that Counts I, II, III, and V should be dismissed because plaintiff failed

to exhaust his administrative remedies.  (ECF No. 20-1 at 12).  Before filing a lawsuit in federal

court, Title VII requires a plaintiff to exhaust administrative remedies by filing a charge with the

EEOC.    Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 593 (4th Cir. 2012).  "Only those

---

264, 281 (4th Cir. 2013) (noting that proper conversion requires that the parties have a reasonable
opportunity for discovery) (citing Fed. R. Civ. P. 12(d)).
[3] Count IV is dismissed with prejudice because plaintiff has voluntarily withdrawn that claim.
(ECF No. 22-1 at 12-13).  Plaintiff, however, appears to seek leave to amend his Complaint and
plead a claim under 42 U.S.C. § 1983.  (Id.)  Specifically, plaintiff argues that his amended
complaint will "clearly show a custom within BPD that discriminates against African American
officers that will be brought under Section 1983."  (Id. at 13).  Defendant contends that leave
should be denied because adding a Section 1983 claim would be "futile" as plaintiff alleges a
custom within BPD that discriminates against black officers based only on plaintiff's own opinions
and beliefs.  (ECF No. 23 at 16-17).  Assuming the allegations of discrimination alleged by plaintiff
to be true, however, as is required of the court at the motion to dismiss stage and, given that plaintiff
has not previously amended his Complaint, the court will afford plaintiff the opportunity to amend
his Complaint to add a claim under Section 1983.  See Owens v. Balt. City State's Attorney's
Office, 767 F.3d 379, 403 (4th Cir. 2014) ("A plaintiff must point to a 'persistent and widespread
practice[] of municipal officials,' the 'duration and frequency' of which indicate that policymakers
(1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their
'deliberate indifference.'") (quoting Spell v. McDaniel, 825 F.3d 1380, 1386-91 (4th Cir. 1987)).
Should plaintiff choose to amend his Complaint to add a Section 1983 claim, plaintiff must assert
that claim as separate cause of action and ensure that he alleges facts which are adequate to support
that claim.

discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Jackson v. Maryland, No. DLB-20-270, 2021 WL 6072929, at *4 (D. Md. Dec. 23, 2021) (citation omitted).  A plaintiff, however, fails to exhaust his administrative remedies when "his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005).  In addition, if "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." Id. at 509 (quoting Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)).

### 1. Counts I and III

Defendant argues that Counts I and III were not administratively exhausted and should be dismissed because the Amended Charge and Complaint involve different actors, timeframes, and conduct.  (ECF No. 20-1 at 13).  Specifically, defendant offers various examples of how plaintiff's Complaint differs from his Amended Charge.  For example, defendant argues that the Amended Charge only names Lt. Slimmer as the alleged perpetrator whereas the Complaint alleges that Ofc. Haley Nehms and Lt. Roeser conspired with Lt. Slimmer against plaintiff.  (Id.)  Defendant also argues that while plaintiff's Amended Charge failed to specifically allege that he was fearful of anyone at the BPD, plaintiff's Complaint "sensationalize[s]" his claims by alleging that "[t]his case is about when the police are fearful of the police."  (Id. at 15-16).

While defendant is correct that plaintiff's Complaint identifies additional actors not referenced in his Amended Charge (ECF No. 1 ¶¶ 41-46) and asserts additional allegations that defendant "created a climate of fear" (id. ¶¶ 1, 112), such additional information would "be

expected to follow from a reasonable administrative investigation" of the claims of discrimination and retaliation asserted by plaintiff in his Amended Charge.  Prosa v. Austin, No. CV ELH-20-3015, 2022 WL 394465, at *18 (D. Md. Feb. 8, 2022).  For example, plaintiff alleged in his Amended Charge that "Lt. Slimmer wrongfully disciplined me, belittled me, and required me to speak to white police officers who would in turn speak to him."  (ECF No. 20-4 at 2).  Relatedly, in his Complaint, plaintiff alleges numerous examples of being disciplined, belittled, and forced to speak to white officers.  Specifically, plaintiff alleges that Lt. Slimmer issued two non-punitive counseling memos against plaintiff, improperly ordered plaintiff to write a non-punitive counseling memo for another officer, conspired with another officer against plaintiff during meetings, and denied safe sick leave for plaintiff to care for his wife.  (ECF No. 1 ¶¶ 37-50).  Plaintiff also alleges other examples in which Lt. Slimmer allegedly "harass[ed]" plaintiff and undermined his ability to effectively complete his work, including, among other things, requiring plaintiff to get a white officer to sign a mandatory appearance form and attend a civil rights event for African Americans.  (Id. ¶¶ 51-55).

The factual allegations asserted by plaintiff in his Amended Charge are also reasonably related to the "central factual allegations" in his Complaint—that Lt. Slimmer discriminated against plaintiff based on his race and retaliated against him for filing internal complaints against Lt. Slimmer.  Chacko, 429 F.3d at 506.  Specifically, the allegations in plaintiff's Amended Charge focus on Lt. Slimmer's alleged racially discriminatory and retaliatory conduct in 2019.  (See ECF No. 20-4 at 2).  Similarly, plaintiff's allegations of racially discriminatory and retaliatory conduct in his Complaint also focus on Lt. Slimmer's conduct in 2019.  (ECF No. 1 ¶¶ 30-55).  Further, plaintiff alleges in his Complaint that Lt. Slimmer told him, "I have had ten EEOC complaints on me and I won them all," and, on another occasion, that "if you are gonna mess with one, mess with

them all so they can't file an EEOC against you." (Id. ¶¶ 31, 34).  Plaintiff referenced both alleged statements in his Amended Charge.  (ECF No. 20-4 at 2).

In addition, plaintiff alleges in his Amended Charge that Lt. Slimmer "subjected non-white officers to higher standards than white officers."  (ECF No. 20-4 at 2).  Plaintiff's allegation in his Complaint about being fearful of other officers (ECF No. 1 ¶¶ 1, 112), as well as the numerous examples in his Complaint of alleged discrimination based on race (id. ¶¶ 23-29), are "reasonably related" to and "can be expected to follow from a reasonable administrative investigation" of plaintiff's allegation of race-based discrimination in his Amended Charge.  Prosa, 2022 WL 394465, at *18.

Finally, defendant asserts that plaintiff improperly modifies the timing of events in his Complaint "so that Lt. Slimmer's actions will appear discriminatory or retaliatory."  (ECF No. 20-1 at 15).  Specifically, defendant notes that plaintiff alleges in his Complaint that Lt. Slimmer made two retaliatory statements *after* plaintiff began filing internal complaints against Lt. Slimmer in April 2019 whereas plaintiff's Amended Charge describes the same two statements as occurring *before* plaintiff began filing internal complaints against Lt. Slimmer.  (Id.)  While the exact timing of Lt. Slimmer's alleged statements and plaintiff's alleged internal complaints appears different in the Complaint than in the Amended Charge, the substance of Lt. Slimmer's statements and plaintiff's internal complaints, as alleged in both the Complaint and the Amended Charge, are the same.  Moreover, "because EEOC charges often are not completed by lawyers, the Fourth Circuit has instructed courts to construe them liberally."  Prosa, 2022 WL 394465, at *18 (internal quotation marks and citations omitted).  While allegations in an EEOC charge generally define the scope of the related complaint in federal court, "the exhaustion requirement should not become a tripwire for hapless plaintiffs," and courts should not "erect insurmountable barriers to litigation

out of overly technical concerns." Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 594-97 (4th Cir. 2012) (noting that Title VII is a remedial statute designed to protect employee rights).  The court, therefore, concludes that plaintiff has exhausted his administrative remedies with respect to Counts I and III, and defendant's Motion to Dismiss is denied as to those counts on the issue of exhaustion.

## 2. Count II

Defendant contends that Count II should be dismissed because plaintiff failed to exhaust his administrative remedies. (ECF No. 20-1 at 12, 17).  Specifically, defendant asserts that plaintiff's Amended Charge fails to reference any sex-based discrimination whereas the Complaint alleges a cause of action based on sex discrimination. (Id. at 17).  Plaintiff contends that the allegations of sex discrimination in his Complaint are "further manifestations of the retaliation [claim]" and, therefore, are reasonably related to the allegations in his Amended Charge.  (ECF No. 22-1 at 4).

As defendant notes, however, neither the original EEOC charge filed on January 27, 2020, nor the Amended Charge filed on March 4, 2021, reference the sex of anyone involved, let alone plaintiff's sex.  (ECF Nos. 20-3, 20-4).  In addition, plaintiff checked the boxes in his Amended Charge only for discrimination based on "race" and "retaliation," not "sex." (Id.)  By contrast, plaintiff's Complaint alleges, for the first time, discrimination based on sex, including multiple allegations that Lt. Slimmer treated white female officers more favorably than black male and female officers.  (ECF No. 1 ¶¶ 24-25, 28-29).  Plaintiff's "failure to put forth a specific allegation [in his Amended Charge] describing [sex] discrimination or showing how [sex] discrimination was related to Plaintiff's allegation that [he] was discriminated against is fatal to his case." Daniels v. James Lawrence Kernan Hospital, Inc., No. WMN-15-255, 2015 WL 5735397, at *2-3 (D. Md. Sept. 29, 2015) (dismissing the plaintiff's claim of color discrimination under Title VII when the

plaintiff checked only the box for discrimination based on race in her EEOC charge and failed to assert any allegation in her charge related to discrimination based on color); see Naves v. Maryland, No. TJS-18-3974, 2021 WL 765686, at *2 (D. Md. Feb. 26, 2021) ("If an EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex, the claim will generally be barred for the plaintiff's failure to exhaust administrative remedies.") (citation omitted). Plaintiff, therefore, has failed to exhaust his administrative remedies with respect to Count II, and that claim is dismissed with prejudice.[4]

### 3. Count V

Defendant also argues that Count V should be dismissed for failure to exhaust administrative remedies. (ECF No. 20-1 at 12). Plaintiff raises his MFEPA claim in Count V on the basis of race discrimination and sex discrimination. (ECF No. 1 ¶ 138-39). This court applies Title VII case law in adjudicating MFEPA claims. Grant, 2022 WL 1321593, at *7. Accordingly, to the extent plaintiff's MFEPA claim is based on race discrimination, that claim is exhausted for the same reasons as plaintiff's Title VII race discrimination claim in Count I, as discussed above. To the extent plaintiff's MFEPA claim is based on sex discrimination, that claim is dismissed with prejudice because, as discussed above, plaintiff failed to exhaust his Title VII sex discrimination claim in Count II. See id. (dismissing the plaintiff's MFEPA claim on the basis of race and gender

---

[4] The court declines to allow leave to amend Count II because no amendment would cure plaintiff's failure to administratively exhaust that claim. Accordingly, leave to amend Count II would be futile. See Wright v. Kent Cnty. Dep't of Soc. Servs., No. ELH-12-3593, 2014 WL 301026, at *27 (D. Md. Jan. 24, 2014) (noting that leave to amend should be denied when amendment would be futile); see also Grant v. Baltimore Police Dep't, No. RDB-21-2173, 2022 WL 1321593, at *4-5 (D. Md. May 3, 2022) (holding that plaintiff failed to administratively exhaust her Title VII race and gender discrimination claims, and dismissing those claims with prejudice).

discrimination with prejudice when plaintiff failed to exhaust her Title VII claims of discrimination based on race and gender).

### B.  Timeliness of Title VII Claims (Counts I, II, III)

Defendant also asserts that plaintiff's Title VII claims in Counts I, II, and III are time barred.  (Id. at 18-20).  In Maryland, a discriminatory charge must be filed with the EEOC within 300 days of the date the alleged unlawful employment practice occurred.  Landa v. Univ. of Md., College Park, No. TJS-22-0016, 2022 WL 2905094, at *5 (D. Md. July 22, 2022); see Tangires v. Johns Hopkins Hosp., 79 F. Supp. 2d 587, 597 (D. Md. 2000) ("Timeliness requirements for an action alleging employment discrimination are to be strictly enforced.").  "Discriminatory acts which fall outside the statutory window are time barred from consideration in federal court, unless they can be related to a timely incident as a series of separate but related acts."  Tangires, 79 F. Supp. 2d at 597.

Defendant argues that because plaintiff filed his initial EEOC charge on January 27, 2020, any claims involving events which occurred prior to April 2, 2019, fall outside the 300-day statutory window for filing claims with the EEOC and, therefore, are time-barred.  (ECF Nos. 20-1 at 18-20, 23 at 6-7).  Defendant is correct that plaintiff filed his initial charge with the EEOC on January 27, 2020.  (ECF No. 20-3).  Only discrete acts of discrimination or retaliation that occurred after April 2, 2019 (i.e., within 300 days of the filing of plaintiff's initial charge), therefore, are actionable.  See Landa, 2022 WL 2905094, at *5.  Acts which occurred prior to April 2, 2019, however, may be considered by the court if they are related to a timely incident.  See Landa, 2022 WL 2905094, at *6 ("Even if certain discrete acts asserted in [plaintiff's] Amended Complaint are time-barred, these acts might serve as evidence to support her timely-asserted claims" and, therefore, may be considered by the court).

Specifically, defendant contends that plaintiff failed to timely preserve his claims regarding the incidents alleged in paragraphs 22 through 29 of plaintiff's Complaint because they occurred outside the 300-day limitations period, between January 2019 and March 2, 2019. (ECF No. 20-1 at 18). While defendant is correct that the incidents alleged in paragraphs 22 through 29 of plaintiff's Complaint—as well as any other incidents which occurred before April 2, 2019—fall outside of the 300-day limitations period, they are nevertheless related to plaintiff's timely claims of discrimination and retaliation and, therefore, may be considered by the court. See Landa, 2022 WL 2905094, at *6. For example, plaintiff alleges in his Complaint that he began filing internal complaints against Lt. Slimmer in April 2019 based on the incidents alleged in paragraphs 22 through 29 of the Complaint, which occurred prior to April 2, 2019. (ECF No. 1 ¶ 30). Plaintiff's Complaint then timely alleges a number of retaliatory acts taken by Lt. Slimmer after April 2, 2019, in response to plaintiff's internal complaints against him. (Id. ¶¶ 31-55). The incidents alleged in paragraphs 22 through 29 of the Complaint—and which are outside the 300-day limitations period—may, therefore, serve as evidence of plaintiff's timely-asserted claims. See Landa, 2022 WL 2905094, at *6. Accordingly, plaintiff's Title VII claims in Counts I, II, and III are not time barred, and defendant's Motion to Dismiss is denied on the issue of timeliness.

### C. Race Discrimination (Count I)

Defendant contends that plaintiff fails to state a claim for race discrimination. (ECF No. 20-1 at 20-26). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). Defendant argues that plaintiff fails to establish any adverse employment action. (ECF No. 20-1

at 22).   An adverse employment action is "a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment."   Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks omitted).   An adverse employment action, however, requires a "significant detrimental effect."   Id.

Here, plaintiff argues that he adequately pleads an adverse employment action because his "work was actively affected by Lt. Slimmer's actions."   (ECF No. 22-1 at 9).   In support of his assertion, plaintiff argues that "subjecting Plaintiff to work without the proper preparation or materials would have adverse consequences on Plaintiff's ability to effectuate his duties."   (Id.)   In addition, plaintiff claims that "Lt. Slimmer ordering Plaintiff to discipline other officers without any basis to do so and reprimanding Plaintiff when he did not despite all BPD policies being followed only further isolated Plaintiff and made it increasingly difficult to execute his responsibilities properly."   (Id.)   For example, plaintiff alleges one incident in his Complaint in which he was unable to complete a particular report because he did not receive the requisite paperwork.   (ECF No. 1 ¶ 46).   Plaintiff also alleges in his Complaint that Lt. Slimmer "needlessly complicate[d] matters" by making a policy change without emailing plaintiff and, on another occasion, required plaintiff to submit an administrative report.   (Id. ¶¶ 52-53).   Further, plaintiff alleges in his Complaint that he was assigned to be shift commander without prior notice and never received any guidance on his responsibilities.   (Id. ¶ 54).

The allegations noted above, however, do not rise to the level of having a "significant detrimental effect" on the terms, conditions, or benefits of plaintiff's employment with defendant. Holland, 487 F.3d at 219; see Madock v. McHugh, Civil No. ELH-10-2706, 2011 WL 3654460, at *15 (D. Md. Aug. 18, 2011), aff'd, 469 F. App'x 200 (4th Cir. 2012) ("Typically, an adverse employment action has been found in cases of discharge, demotion, decrease in pay or benefits,

loss of job title or supervisory responsibility, or reduced opportunities for promotion.").  While plaintiff alleges that Lt. Slimmer's actions "undermined" him "by ill-preparing him for an opportunity for career advancement" (ECF No. 1 ¶ 54), plaintiff does not allege that Lt. Slimmer *reduced opportunities* for promotion or otherwise provide allegations to support such an assertion. Rather, plaintiff summarily concludes that the "actions of BPD leadership and their effects on Plaintiff are well within the definition of a 'materially adverse action.'"  (ECF No. 22-1 at 9). Plaintiff, however, provides no supporting authority for his assertion.  Accordingly, plaintiff fails to state a Title VII claim for race discrimination in Count I, and that claim is dismissed without prejudice and with leave to amend.[5]  See Grant, 2022 WL 1321593, at *6-7 (dismissing Title VII claims without prejudice when leave to amend would not prejudice the opposing party, there was no bad faith on the part of the moving party, and amendment would not be futile).

### D.  Hostile Work Environment

Defendant asserts that plaintiff fails to state a claim for hostile work environment.[6]  (ECF No. 20-1 at 26-27).  A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Boyer-

---

[5] Defendant also argues that plaintiff fails to state a claim for retaliation under Title VII.  (ECF No. 23 at 10-13).  To adequately plead a Title VII retaliation claim, a plaintiff must allege facts showing: "(1) that [he] engaged in a protected activity . . . (2) that [his] employer took an adverse employment action against [him], and (3) that there was a causal link between the two events." DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015) (quoting Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (internal quotation marks omitted).  For the same reasons discussed above with respect to plaintiff's Title VII race discrimination claim in Count I, plaintiff fails to adequately plead an adverse action for purposes of his Title VII retaliation claim in Count III.  Accordingly, Count III is dismissed without prejudice and with leave to amend.
[6] In light of the dismissal of plaintiff's Title VII sex discrimination claim in Count II, as discussed above, plaintiff's hostile work environment claim is also dismissed with prejudice to the extent that claim is based on sex discrimination.

Liberto, 786 F.3d at 277 (internal quotation marks and citation omitted).  To adequately plead a hostile work environment, a plaintiff must allege facts showing: "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected status]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer."  Strothers v. City of Laurel, Md., 895 F.3d 317, 328 (4th Cir. 2018) (quoting Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011)).  With respect to the third element, an abusive work environment requires a showing that the work environment is perceived and would be perceived by a reasonable person in the plaintiff's position as hostile or abusive.  Boyer-Liberto, 786 F.3d at 277 (considering factors including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance).  An isolated incident of harassment, however, may be sufficient if it is "extremely serious."  Id.

Here, plaintiff alleges in his Complaint that Lt. Slimmer allowed white officers, but not black officers, to choose their detail and training days and were granted overtime hours whereas black officers were not.  (ECF No. 1 ¶ 25).  Plaintiff also alleges that Lt. Slimmer "closely scrutinize[ed]" black officers and disciplined black and white officers inconsistently.  (Id. ¶ 26).  For example, on one occasion, Lt. Slimmer allegedly charged a black officer and threatened disciplinary action for not having their shoes laced during roll call whereas white officers were not disciplined or reprimanded for the same infraction.  (Id.)  In addition, plaintiff alleges that Lt. Slimmer "would criticize officers of color on the smallest issues," follow black female officers while on the shift without reason, and force black officers, but not white officers, to tow legally parked cars.  (Id. ¶¶ 27-29).

Plaintiff, however, fails to adequately plead the third element of a hostile work environment claim because the allegations described above are not sufficiently severe or pervasive to alter plaintiff's conditions of employment and to create an abusive work environment.  For example, while plaintiff alleges that Lt. Slimmer allowed only white officers to choose their detail and training days and were granted overtime hours, plaintiff fails to indicate the frequency of such conduct.  Similarly, while plaintiff alleges that Lt. Slimmer closely scrutinized only black officers, he provides only a single example of one black officer being threatened with disciplinary action for not having their shoes laced during roll call.  (ECF No. 1 ¶ 26).  Plaintiff also alleges in conclusory fashion that Lt. Slimmer "would criticize officers of color" without providing any factual support or examples.

In addition, with respect to plaintiff's allegations regarding Lt. Slimmer's following officers and instructions to black officers to tow legally parked cars, plaintiff again fails to describe the frequency of such conduct.  Notably, many of plaintiff's allegations relate to Lt. Slimmer's conduct towards *other employees*.  It is unclear, therefore, how Lt. Slimmer's conduct altered *plaintiff's* conditions of employment.  See Connelly v. Maryland Dep't of Human Servs., No. JKB-21-1068, 2021 WL 6000076, at *8 (D. Md. Dec. 20, 2021) (dismissing the plaintiff's hostile work environment claim when he failed to allege facts showing how invasive personal questions from coworkers impacted his work in any meaningful way).

Further, plaintiff alleges numerous examples of alleged retaliatory conduct that created a hostile work environment.  For example, plaintiff alleges that in retaliation for plaintiff's filing of internal complaints, Lt. Slimmer issued two non-punitive counseling memos against plaintiff, reprimanded an officer under plaintiff's command based on false pretenses, made it difficult for plaintiff to complete required paperwork, and refused to allow plaintiff sick leave to care for his

wife. (ECF No. 1 ¶¶ 36-50). Plaintiff also alleges other instances in which Lt. Slimmer manipulated workplace policies, required plaintiff to "needlessly" fill out additional paperwork, assigned plaintiff to a different position without any notice or guidance, and required plaintiff to force another officer to attend a civil rights event for African Americans. (Id. ¶¶ 51-55).

Plaintiff's allegations, however, are premised on nothing more than "a routine difference of opinion and personality conflict with" Lt. Slimmer. See Holloway v. Maryland, 32 F.4th 293, 301 (4th Cir. 2022) (dismissed hostile work environment claim when plaintiff alleged that his supervisor scheduled a meeting an hour and a half earlier than usual, criticized plaintiff's leadership and budget management in meetings, once slammed documents onto a table, required plaintiff to address him as "sir," required plaintiff to sign a disciplinary evaluation, and refused to honor plaintiff in an employee-recognition program, among other actions). Plaintiff's allegations are not actionable under Title VII. See id. Accordingly, plaintiff fails to state a hostile work environment claim, and that claim is dismissed without prejudice and with leave to amend.[7] See Grant, 2022 WL 1321593, at *6-7 (dismissing hostile work environment claim without prejudice when leave to amend would not prejudice the opposing party, there was no bad faith on the part of the moving party, and amendment would not be futile).

---

[7] As defendant notes, plaintiff does not specifically bring a cause of action for a hostile work environment but instead "tacks on this allegation" to his race discrimination and retaliation claims in Counts I and III. (ECF No. 23 at 13). Race discrimination and retaliation claims, however, "are entirely distinct from hostile work environment claims," which require independent factual allegations to support the four elements of a hostile work environment claim, as discussed above. Guion v. Mabus, No. 4:11-CV-159-F, 2012 WL 1340117, at *8 (E.D.N.C. Apr. 17, 2012). Accordingly, should plaintiff choose to amend his Complaint to include a hostile work environment claim, plaintiff should assert a separate cause of action and allege independent facts in support of that claim.

### E.  MFEPA Claim (Count V)

Finally, defendant asserts that plaintiff's MFEPA claim in Count V should be dismissed because plaintiff failed to comply with the notice provision of the Local Government Tort Claims Act ("LGTCA") and defendant has sovereign immunity from state law claims.  (ECF No. 20-1 at 28-30).  Plaintiff maintains that he may bring a parallel state claim on the same basis as his Title VII claims because "[t]here is nothing in the Maryland Code related to claims of employment discrimination filed by a police officer, who is a public employee, against her employer, the Baltimore Police Department, which is a public employer."  (ECF No. 22-1 at 13).

The LGTCA provides that a plaintiff must give local government defendants notice of claims within 180 days of injury.  Md. Cts. & Jud. Proc. § 5-304(a).  "The notice shall be in writing and shall state the time, place, and cause of the injury."  Id. § 5-304(b)(3).  "Compliance with the LGTCA is a condition precedent to maintaining suit against a local government."  Edwards v. Montgomery College, TDC-17-3802, 2018 WL 4899311, at *8 (D. Md. Oct. 9, 2018) (citing Rios v. Montgomery Cnty., 872 A.2d 1, 14 (Md. 2005)).  "As a result, a plaintiff is required, in the complaint, to plead compliance with the notice provision of the LGTCA."  Id.  A timely-served EEOC charge, however, "can be used to satisfy the notice requirement [if] it 'provide[s] the identity of the claimant, the time and place of the event, the nature of the claim, and the [p]laintiff's intent to pursue litigation.'"  Brown v. Balt. Police Dep't, RDB-11-00136, 2011 WL 6415366, at *13 (D. Md. Dec. 21, 2011) (quoting Nelson v. City of Crisfield, BEL-10-1816, 2010 WL 4455923, at *2 (D. Md. Nov. 5, 2010).

In this case, plaintiff fails to plead compliance with the LGTCA in his Complaint.  (See ECF No. 1).  The court, however, need not decide whether plaintiff satisfied the LGTCA notice requirement by filing his EEOC charge because defendant is entitled to sovereign immunity from

plaintiff's MFEPA claim.  See Estate of Anderson v. Strohman, 6 F. Supp. 3d 639, 643 (D. Md. 2014) (holding that the LGTCA did not bar the BPD from asserting sovereign immunity and, therefore, dismissing state law claims against the BPD with prejudice); see also Jackson v. Balt. Police Dep't, WDQ-11-3569, 2013 WL 1121412, at *9 (D. Md. March 15, 2013) (dismissing state law claims against the BPD for the same reasons).  "Put simply, the LGTCA only prohibits the BPD from asserting sovereign immunity to avoid its statutorily-imposed duty to defend or indemnify its employees." Id. (citing Balt. Police Dep't v. Cherkes, 140 Md. App. 282, 780 A.2d 410, 424 (Md. Ct. Spec. App. 2001)).  "But the BPD cannot be vicariously liable and may still raise sovereign immunity in its own defense.  Even under the LGTCA, Plaintiffs cannot bring state law claims directly against the BPD for the actions of Baltimore police officers acting within the scope of their employment." Id.  Accordingly, plaintiff's MFEPA claim in Count V is dismissed with prejudice.[8]

---

[8] Leave to amend Count V will not be permitted because defendant cannot be liable for the violation alleged by plaintiff under the MFEPA.  No amendment of the complaint, therefore, would cure that defect.  See Estate of Anderson, 6 F. Supp. 3d at 646 (denying leave to amend the plaintiff's complaint for the same reasons).

**IV.**     **CONCLUSION**

For the foregoing reasons, defendant's Motion to Dismiss (ECF No. 20) is GRANTED. Specifically, Counts II, IV, and V are dismissed with prejudice.  Counts I and III are dismissed without prejudice and with leave to amend.  The court will also grant plaintiff leave to amend the Complaint to add separate causes of action for a hostile work environment and a claim under 42 U.S.C. § 1983.  Plaintiff is granted leave to file an Amended Complaint by no later than September 7, 2022.  If plaintiff fails to do so, the Clerk is directed to close this case.  A separate order will be issued.

August 16, 2022                                    _____/s/_____
                                                   Beth P. Gesner
                                                   Chief United States Magistrate Judge